Slava Hazin (SH 3554)                                   Hearing date: December 4, 2015
Warshaw Burstein, LLP                                   Time: 10:30 a.m.
  *Attorneys for Unsecured Creditors*
  *137 Broadway Associates, L.L.C.*
  *164 Broadway Associates, L.L.C.*
  *180 Broadway Associates, L.L.C.*
  *145 Vermilyea Associates, L.P.*
555 Fifth Avenue
New York, New York 10017
(212) 984-7700

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
In re                                              :        Chapter 11
                                                          :
     GINO J. HERNANDEZ,         :        Case No. 15-12968 (shl)
                                                          :
                              Debtor.    :
                                                            :
------------------------------------------------------X

**OPPOSITION TO DEBTOR'S MOTION TO CONTINUE
THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(c)(3)(B)**

**TO:    THE HONORABLE SEAN H. LANE, UNITED STATES BANKRUPTCY JUDGE:**

      137 Broadway Associates, L.L.C., 164 Broadway Associates, L.L.C., 180 Broadway Associates, L.L.C., and 145 Vermilyea Associates, L.P. (collectively, the "Landlord Creditors"), the largest unsecured creditors of debtor Gino J. Hernandez (the "Debtor"), in this Chapter 11 case,[1] by their counsel, Warshaw Burstein, LLP, hereby state as follows:

      1.    Landlord Creditors oppose Debtor's groundless motion to continue the automatic stay pursuant to 11 U.S.C. § 362(c)(3)(B).

---

[1] As discussed below, Debtor's own schedules list nearly $1.25 million of unsecured debt, almost all of which—totaling more than $1.2 million—is comprised of undisputed rent arrears due and owing to Landlord Creditors on five (5) separate commercial leases.

{917346.1 }

2. As discussed below, Debtor has failed to demonstrate that his <u>second</u> bankruptcy filing this year was undertaken in "good faith" with respect to Landlord Creditors (or any of the other creditors).

3. Indeed, Landlord Creditors have moved to dismiss Debtor's Chapter 11 petition, and for the imposition of sanctions against Debtor and the Debtor's counsel, because the petition was filed in bad faith, solely to avoid entry of judgment for undisputed commercial rent arrears and to frustrate Landlord Creditors' efforts to regain possession of their real property (which Debtor has been occupying without paying any rent for an extended time period).[2]

4. Nor has Debtor even come close to rebutting the presumption, by <u>clear and convincing evidence</u>, that his second bankruptcy petition was not filed in good faith.

5. Accordingly, the Court should not only deny Debtor's motion to continue the automatic stay, but it should also grant Landlord Creditors' pending motion to dismiss the petition and for appropriate sanctions against the Debtor and Debtor's counsel.

## BACKGROUND

6. Debtor is personally liable as the tenant under five (5) separate commercial leases with Landlord Creditors. Debtor has failed to pay rent for well over a year, accumulating rent arrears that now total more than <u>$1.2 million</u>. Debtor has also frustrated the legitimate efforts of Landlord Creditors to regain possession of their commercial premises, and to recover the substantial rent arrears, by filing <u>two (2)</u> bankruptcy petitions within the past six (6) months, all while refusing to pay <u>any</u> post-petition rent.

---

[2] <u>See</u> Document No. 27. The Landlord Creditors' motion to dismiss the petition and for sanctions is scheduled to be heard by this Court on December 8, 2015.

{917346.1}    2

7. In August 2014, the Landlord Creditors commenced, in the Commercial Landlord-Tenant Part of the Civil Court of the City of New York, New York County, five (5) separate nonpayment proceedings.[3]

8. Shortly before scheduled trial dates in all five (5) proceedings, on June 2, 2015, the Debtor hastily filed a Chapter 13 petition,[4] even though he was not qualified for relief under Chapter 13, as his unsecured debt—more than $800,000—far exceeded the statutory limit of $383,175.00.

9. Contrary to Debtor's disingenuous representation that he "voluntarily" moved to convert his Chapter 13 case to one under Chapter 11 of the Code, Debtor filed that motion only <u>after</u> both the Chapter 13 Trustee and Landlord Creditors had moved to dismiss his Chapter 13 petition, based upon Debtor's ineligibility and evidence abuse of the bankruptcy process.

10. The Landlord Creditors had also moved to compel Debtor to pay post-petition rent (then totaling in excess of $120,000) and to lift the automatic stay so that the Landlord Creditors could continue prosecuting the nonpayment proceedings.

11. In August 2015, in opposition to Landlord Creditors' motion, and in support of his own dubious motion to convert his Chapter 13 case to one under Chapter 11 of the Code, Debtor represented to the Court, without providing any evidentiary support, that he planned to

---

[3] Those proceedings are entitled: (i) <u>137 Broadway Associates LLC v. Gino Hernandez d/b/a Restaurant</u> (L&T Index No. 076362/14); (ii <u>180 Broadway Associates LLC v. Gino Hernandez d/b/a Restaurant</u> (L&T Index No. 076363/14); (iii) <u>164 Broadway Associates LLC v. Gino Hernandez and Jose Hernandez d/b/a 3920 Bwy Rest. Inc.</u> (L&T Index No. 076364/14); (iv) <u>145 Vermilyea Associates LP v. Gino Hernandez d/b/a Restaurant</u> (L&T Index No. 076365/14); and (v) <u>137 Broadway Associates LLC v. Gino Hernandez d/b/a Restaurant</u> (L&T Index No. 076366/14).

[4] Case No. 15-11470 JLG.

pay his creditors with purported "third party funds" that would be available "no later than October 15, 2015."[5]

12. Even so, this Court (Garrity, J.) granted the Chapter 13 Trustee's motion to dismiss, finding that: (1) "debtor caused unreasonable delay that is prejudicial to creditors;" (2) Debtor failed to remit plan payments to the Trustee; (3) Debtor failed to timely file certain required documents; (4) Debtor failed to provide certain required state and federal tax returns to the Trustee; and (5) Debtor's unsecured debt exceeded Chapter 13's $383,175.00 statutory limit.[6]

13. This Court also denied Debtor's motion to convert, as the Debtor had failed to present any credible evidence—no signed contract or even a loan commitment—of his purported "intention" to fund a reorganization plan with "third party funds" provided by a family member. See Order (Exhibit B).

14. Notably, the "plan" that was previously rejected by this Court (when it denied Debtor's motion to convert) is the very same "plan" that Debtor now claims demonstrates that he filed his second petition in "good faith."

---

[5] See ¶ 4 of Debtor's Motion to Convert Chapter 13 Bankruptcy to a Chapter 11 Bankruptcy, a copy of which is annexed hereto as Exhibit A. In opposition to the Landlord Creditors' pending motion to dismiss his present Chapter 11 petition, Debtor disclosed, for the first time, that the alleged "third party funds" are now available from the sale of a $1.2 million property owned by HC Property Management Corp., an alleged "family controlled entity." However, Debtor has provided no evidence that the contract actually closed in late November 2015. Moreover, Debtor failed to provide a copy of any binding agreement evidencing that HC Property Management Corp. has agreed to loan any funds to Debtor. Nor did Debtor disclose the amount of funds supposedly available to Debtor. Even if HC Property Management Corp. has agreed to loan Debtor the entire amount of the sales proceeds ($1.2 million, which assumes no mortgage or liens on the property), such amount would still be substantially less than the amount necessary to pay at least $2 million in priority tax claims and unsecured claims due to Landlord Creditors, and Debtor has not shown that he would even be permitted to remit any of those wholly unquantified funds to Landlord Creditors.

[6] A copy of the dismissal Order is annexed hereto at Exhibit B.

{917346.1}                                      4

15.     Thus, as discussed below, this Court's prior Order, denying Debtor's motion to covert, precludes Debtor from now claiming that he has the means to reorganize, as Debtor has not demonstrated any change in his financial circumstances in the past month to justify a second bankruptcy filing.

16.     Indeed, Debtor's present motion, just like his prior, unsuccessful motion, is completely devoid of any credible evidence that he will be able to fund a reorganization plan, supposedly through "operating income and family provided third party funds."

17.     The entity that Debtor claims will provide "operating income" is itself in bankruptcy. Debtor's entity, 3920 Bwy Rest, Inc. ("3920 Bwy"), which operates a restaurant at one of Landlord Creditor's properties (at 3920 Broadway, New York, New York 10032), filed a Chapter 11 petition on November 4, 2015.[7]

18.     That case is currently pending before Bankruptcy Judge Stuart M. Bernstein. Notably, 3920 Bwy previously filed a Chapter 11, which was dismissed by this Court (Lane, J.) on July 25, 2015, "for cause," under Section 1112(b) of the Bankruptcy Code.[8]

19.     As recently disclosed by the Debtor himself in a declaration filed with this Court,[9] a second restaurant operated by the Debtor, La Parrilla Restaurant, in premises owned by Landlord Creditor 137 Broadway Associates L.L.C., at 602 West 137th Street, New York, New York, 10031, was recently padlocked by the New York State Department of Taxation and

---

[7] Case No. 15-12969 (smb).

[8] Case No. 15-10847(shl).  A copy of the dismissal Order is annexed hereto as Exhibit C.

[9] See a copy of Debtor's Local Rule 1007-2 Declaration at Exhibit D.

Finance for failure to pay sales taxes, further complicating tenant's alleged ability to fund a purported reorganization "plan."

20. That restaurant was being operated by Parrilla Grill Rest. Inc. ("Parrilla"), another one of Debtor's entities that filed for bankruptcy protection.[10] On November 25, 2015, this Court (Garrity, J.) dismissed Parrilla's Chapter 11 petition on Parrilla's own motion, as Parrilla admitted that it was unable to reorganize due to its substantial tax obligations to the State of New York.

21. Moreover, at the hearing on the dismissal of Debtor's prior Chapter 13 filing on October 1, 2015, Debtor's counsel, as well as separate bankruptcy counsel for 3920 Bwy and Parrilla, admitted that Parrilla had lost its liquor license and lacked the funds to pay the substantial fine to have the license reinstated by the New York State Liquor Authority. Without a liquor license, Debtor cannot operate either of the spaces that he leases from Landlord Creditor 137 Broadway Associates L.L.C. (which spaces, like those leased from 180 Broadway Associates L.L.C. and 145 Vermilyea Associate L.L.C., are not even being used).

22. Further, Debtor's own filed schedules show that Debtor has no income and that his living expenses are supposedly being paid by an unidentified relative and neighbor.

23. Following the dismissal of Debtor's Chapter 13 petition in early October 2015, Landlord Creditors moved, in Landlord-Tenant Court, to restore the nonpayment proceedings and to obtain mandatory "rent orders" in those cases. As a result of Debtor's failure to comply with three (3) rent orders that were entered, those Landlord Creditors moved for entry of judgments of possession and warrants of eviction in three (3) of the nonpayment proceedings.

---

[10] Case No. 15-12210(jlg).

{917346.1}                                6

24. Debtor, however, interfered with Landlord Creditors' legal right to regain possession of the leased premises and to obtain a money judgment against Debtor by filing, on November 4, 2015, his present Chapter 11 petition, the day before scheduled trials in Landlord-Tenant Court.

25. As with his previous petition, Debtor filed the present Chapter 11 petition specifically for the purpose of preventing Landlord Creditors from entering judgments and regaining possessions of those leased properties. The nonpayment proceedings have been adjourned to <u>December 11, 2015</u>, pending the expiration of the automatic stay on December 4, 2015.

26. Under these circumstances, and because Debtor filed his Chapter 11 petition over the objection of counsel for Landlord Creditors, only a few weeks after the prior case was dismissed, the filing is presumptively undertaken in bad faith and an abuse of the bankruptcy process.

## DEBTOR'S MOTION TO CONTINUE THE AUTOMATIC STAY SHOULD BE DENIED

27. This Court should deny Debtor's present motion to continue the automatic stay, because Debtor has not demonstrated that he filed his second bankruptcy petition this year in good faith with respect to any of his creditors, including and especially Landlord Creditors.

### i. DEBTOR'S SECOND BANKRUPTCY FILING THIS YEAR WAS NOT UNDERTAKEN IN GOOD FAITH

28. Indeed, the undisputed facts demonstrate that Debtor filed his Chapter 11 petition in bad faith, only weeks after the dismissal of his prior Chapter 13 petition. There has been absolutely no change in the Debtor's financial circumstances to justify his second bankruptcy

filing. Moreover, Debtor has no realistic prospect of confirming a viable Chapter 11 reorganizing plan, let alone a good faith basis to extend the automatic stay.

29. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 drastically modified the automatic stay provisions of the Bankruptcy Code. One of the significant changes it instituted was to terminate the automatic stay if a person has been a debtor in a prior bankruptcy case "pending within the preceding 1-year period…" on the 30th day after filing the second case. See 11 U.S.C. § 362(c)(3) and 11 U.S.C. § 362(c)(3)(A).

30. As acknowledged by Debtor and his counsel, a debtor may move to continue the automatic stay if the <u>debtor</u> demonstrates that the filing of the later case was undertaken in "good faith." 11 U.S.C. § 362(c)(3)(B).

31. Under the Bankruptcy Code, the presumption that the case was <u>not</u> filed in good faith is automatically triggered when *any* of the following acts or omissions are present:

    (i)    more than one bankruptcy case (under any chapter) was pending against the debtor in the year prior to the filing of the instant case. See 11 U.S.C. § 362(c)(3)(C)(i)(I).

    (ii)    the debtor, in a prior case pending against him or her in the year prior to the filing of the instant case, failed to take any of three specifically defined acts:

        a. failure to file or amend the petition or other documents as required by the Bankruptcy Code or the court, without substantial excuse;

        b. failure to provide court-ordered adequate protection; or

        c. failure to perform the terms of a plan confirmed by the court. See 11 U.S.C. § 362(c)(3)(C)(i)(II).

    (iii)    there is no substantial change in the financial or personal affairs of the debtor since dismissal of his or her last bankruptcy case, and there is no other reason to conclude

        that the instant case will conclude with either a discharge in Chapter 7 or a confirmed and fully performed plan under Chapter 11 or Chapter 13. See 11 U.S.C. § 362(c)(3)(C)(i)(III).

(iv)    the debtor's prior case was dismissed when either a creditor's motion for relief from the automatic stay was still pending or had been resolved by terminating, conditioning or limiting the stay as to actions of the creditor. See 11 U.S.C. § 362(c)(3)(C)(ii).

See generally In re Warneck, 336 B.R. 181, 185 (Bankr. S.D.N.Y. 2006); In re Charles, 332 B.R. 538, 542 (Bankr. S.D. Tex. 2005).[11]

32.    The presumption that the filing was initiated in bad faith can only be rebutted by clear and convincing evidence to the contrary, and the burden may be "substantial." 11 U.S.C. § 362(c)(3)(C); Charles, 332 B.R. at 542.

33.    In essence, the debtor must "establish by clear and convincing evidence that [the] case was filed in good faith with respect to the creditors to be stayed" and "[d]ebtors whose cases are doomed to fail should not get the benefit of an extended automatic stay." Id.

34.    In addition, even if it can be established that the subsequent bankruptcy was filed in good faith, the Code does not mandate that the court extend the stay. Id. Rather, it is a discretionary exercise motivated by a debtor's demonstration of sufficient equitable factors to justify the extension. Id.

---

[11] Significantly, Debtor's cited authorities pre-date the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. See In re Kingston Square Assocs., 214 B.R. 713, 725 (Bankr. S.D.N.Y. **1997**); In re Little Creek Development Co., 779 F.2d 1068, 1072 (5th Cir. **1986**); In re C-TC 9th Ave. P'ship, 113 F.3d 1304 (2d Cir. **1997**). In addition, while the authorities discuss the standard to be applied in determining whether a bankruptcy petition was filed in bad faith so as to warrant dismissal, or to determine whether the automatic stay should be lifted, they do not address the standard that is applicable in determining whether the automatic stay should be extended in a bankruptcy matter, when, as here, a filing is initiated within a year of a prior bankruptcy dismissal. Id.

{917346.1}        9

35. Here, there are multiple factors demonstrating that Debtor's <u>second</u> bankruptcy filing this year was undertaken in <u>bad faith</u>, requiring the denial of Debtor's motion to continue the automatic stay.

36. First, Debtor's prior Chapter 13 petition was dismissed, because Debtor failed: (i) to make any payments to the Chapter 13 Trustee; (ii) to pay any post-petition rent; and (iii) to provide his income tax returns to the Chapter 13 Trustee prior to the scheduled Section 341 meeting.[12] In addition, and perhaps most importantly, this Court found that Debtor had caused "unreasonable delay" that was "prejudicial" to creditors.

37. Second, there has been no substantial change (or any change for that matter) in the financial or personal affairs of Debtor since the dismissal of his prior bankruptcy case only a month ago. This is established by Debtor's failure to provide any documentary evidence demonstrating his alleged "ability" to fund his supposed reorganization "plan." There is no reason to believe that Debtor will be able to confirm a Chapter 11 reorganization plan, having failed to convince this Court of his purported ability to do the same at the hearing recently held on October 1, 2015.[13]

38. Notwithstanding Debtor's self-serving claim that he will be able to fund a reorganization plan with "family provided third party funds" and income through his business at 3920 Broadway, Debtor has demonstrated no ability to do so.

---

[12] At the 341 meeting of creditors, Debtor also readily admitted that he failed to file personal income tax returns for several years, and that he is a resident of New Jersey.

[13] As previously noted, in opposition to Landlord Creditors' motion to dismiss the Chapter 11 petition, Debtor attached a copy of a contract of sale for a property allegedly owned by a "family controlled entity." Conspicuously absent was any evidence that the contract actually closed, or an executed loan agreement between HC Property Management Corp. and Debtor. Nor did Debtor disclose the amount of the funds that are allegedly now available to Debtor to fund his fictional "plan."

39. Indeed, Debtor has been claiming to have access to "family funds" since his prior Chapter 13 filing, promising availability of funds by October 2015. However, that date has come and gone and those funds have never materialized, and Debtor has presented no evidence that they ever will.

40. Moreover, according to the Debtor's own filed Schedule F,[14] Debtor lists a total of $1,247,371.34 in unsecured non-priority claims, $1,222,060.05 of which is owed to Landlord Creditors for rent arrears. Debtor also lists $486,269.86 as due to the New York State Department of Taxation and Finance, among other creditors, as an unsecured priority claim.[15] Debtor lists the New York City Finance Department as a creditor, but failed to list the amount of its claim. Notably, Debtor failed to list the United States Treasury as a creditor, even though, by his own admission, he has failed to file personal income tax returns (and pay income taxes) for a number of years.

41. According to his own filed Statement of Financial Affairs[16] and Schedule I,[17] Debtor has had no income for the past two (2) years. In addition, as mentioned above, Debtor's restaurant business, 3920 Bway, is in bankruptcy, and Parrilla was shuttered by the New York State Department of Finance and Taxation for failure to pay sales taxes. It also lacks a liquor license.

42. Thus, in order to fund a reorganization plan, Debtor would need to borrow at least $2 million (if not more) from family members and third parties. However, in support of his

---

[14] A copy of Debtor's Schedule F is annexed hereto as Exhibit E.

[15] A copy of Debtor's Schedules D and E are annexed hereto as Exhibit F.

[16] A copy is annexed hereto as Exhibit G.

[17] A copy is annexed hereto as Exhibit H.

present motion Debtor has failed to present a single document (a loan agreement or even a loan commitment) demonstrating his ability to borrow such funds. Even if HC Property Management Corp. were to loan to Debtor all of its proceeds from the $1.2 million sale of its property, it would still be woefully insufficient to fund a plan acceptable to Landlord Creditors, the largest unsecured creditors in this Chapter 11 case.

43.   Thus, Debtor's self-serving, conclusory assertions are in stark contrast to the "family funding" approved by the Bankruptcy Court in In re Warneck, 336 B.R. 181, 185 (Bankr. S.D.N.Y. 2006). There, the debtor's family members provided numerous affidavits and other information that outlined their employment status, willingness to contribute, and specific monies that they would be able to pay. Id. at 185-186. In stark contrast to the case here, there the Court found that such evidence was credible and that it satisfied the substantial change in financial circumstances requirement to continue the automatic stay. Id. at 186.

44.   Third, Debtor's lack of a good faith basis for having filed his second bankruptcy petition is also supported by the fact that Debtor's prior Chapter 13 case was dismissed when Landlord Creditors' motion for relief from the automatic stay was still pending (the motion was rendered "moot" by the dismissal of the case).

45.   Debtor, of course, has still not any rent for any of his leaseholds since he first went into bankruptcy in early June 2015, meaning that no basis could possibly exist for further extending the automatic stay, as it would extremely prejudicial to Landlord Creditors (and other creditors).

46.   Based on the foregoing, Debtor has not come close to demonstrating that his second bankruptcy filing was undertaken in good faith.

### ii. DEBTOR'S CLAIMED ABILITY TO FUND A "PLAN" IS PRECLUDED BY THE DOCTRINE OF COLLATERAL ESTOPPEL

47. Debtor's claimed ability to fund a Chapter 11 reorganization "plan" is precluded by the doctrine of collateral estoppel.

48. In denying Debtor's motion to convert his Chapter 13 case to one under Chapter 11 of the Code, Judge Garrity previously determined that Debtor lacked the means to reorganize under Chapter 11 (see Exhibit B).

49. It is well established that "[t]he normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts." Katchen v. Landy, 382 U.S. 323, 334 (1966) (citations omitted); see In re Bono, 70 B.R. 339, 342-343 (Bankr. E.D.N.Y. 1987).

50. As the Second Circuit stated in Purdy v. Zeldes, 337 F.3d 253, 258 (2d Cir. 2003), "[t]he doctrine of collateral estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding."

51. As further stated by the Purdy Court, "[c]ollateral estoppel applies when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in a previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Id. (citation and internal quotation marks deleted).

52. Here, Debtor's attempt to re-litigate Judge Garrity's prior decision is barred by the doctrine of collateral estoppel.

53. First, in the prior Chapter 13 proceeding, Debtor himself raised the identical issue of his purported ability to fund a plan through "access to family funding," in a desperate attempt to convert his Chapter 13 case to one under Chapter 11 of the Code, so as to continue to be under

{917346.1}    13

the protection of the automatic stay and prevent Landlord Creditors from obtaining judgments and retaking their commercial premises.

54. Second, the issue of Debtor's ability to fund a plan was actually litigated in the prior, dismissed Chapter 13 case and determined against Debtor in the October 5, 2015 dismissal Order, as Debtor had failed to present any credible evidence of his ability to fund a Chapter 11 plan.

55. Third, Debtor had a full and fair opportunity to litigate this very issue in the prior Chapter 13 case.

56. Fourth, this Court's prior finding that Debtor was unable to fund a plan was necessary to support the Court's valid Order, denying (on the merits) Debtor's prior motion to convert his Chapter 13 case to one under Chapter 11.

57. Significantly, Debtor has also failed to demonstrate any change in his financial circumstances in the past month to justify a different result.

58. Based on the foregoing, Debtor is precluded, under the doctrine of collateral estoppel, from now claiming that he has the means to fund a Chapter 11 reorganization plan, so as to continue the automatic stay.

### iii. DEBTOR'S DISENGENUOUS REPRESENTATIONS DEMONSTRATE HIS BAD FAITH IN FILING A SECOND BANKRUPTCY PETITION THIS YEAR

59. The Court should also consider the disingenuous representations made by Debtor in determining whether Debtor filed his second bankruptcy in good faith.

60. While Debtor claims that he has "good intentions" in filing his Chapter 11 petition, his false statements reveal that the very opposite is true.

61. For instance, despite Debtor's claim that he filed this petition "to protect his primary residence located at 164 McGregor Road, Mt. Arlington, New Jersey," Debtor's own schedules show that the property is <u>not</u> encumbered by a mortgage and there are <u>no</u> filed judgments against the Debtor.[18]

62. In fact, Debtor's counsel incredulously made the very same misrepresentation before Bankruptcy Judge Garrity in his prior Chapter 13 case.

63. The undeniable truth is that Debtor filed two (2) separate bankruptcies this year solely for the improper purpose of stalling and delaying the nonpayment proceedings in Landlord-Tenant Court and preventing Landlord Creditors from exercising their legal rights to regain possession of the leased premises and to recover the substantial rent arrears from Debtor.

64. Further, although Debtor claims that he offered to "surrender" all of the commercial leases, except for the 3920 Broadway space (where 164 Broadway Associates L.L.C. is the landlord), the offer was wholly disingenuous.[19]

65. Tellingly, Debtor has never once tendered the keys to any of the leased premises, but has always conditioned any surrender "offers" on untenable terms. In fact, Debtor's most recent "offer" was premised upon the entry of judgments of possession and the issuance of warrants of eviction <u>after</u> the filing of a bankruptcy by Debtor, which rendered the offer meaningless and unenforceable. Were this supposed intention to surrender the spaces genuine, Debtor and his counsel would have simply turned in the keys, rather than pretending that surrender was "imminent," as they have been doing since July 2015.

---

[18] <u>See</u> a Copy of Debtor's Schedule A, annexed hereto as <u>Exhibit I.</u>

[19] A copy of the offer, and counsel for 164 Broadway L.L.C's response, are attached as <u>Exhibit J.</u>

## CONCLUSION

66. In sum, Debtor has failed to demonstrate that his <u>second</u> bankruptcy petition was filed in good faith in order to continue the automatic stay beyond the statutory thirty (30)-day period.

67. In fact, Debtor has not come close to rebutting, by <u>clear and convincing evidence</u>, the presumption that his second filing was not undertaken in good faith.

68. The denial of Debtor's motion is especially appropriate given that it is based on his alleged ability to fund a plan using "available monthly income," which this Court has previously determined Debtor utterly lacked.

69. Likewise, his self-serving, unsubstantiated, and implausible claim that he will be able to fund a plan using family funding is wholly insufficient to satisfy his substantial burden on such motion.

70. Given these undisputed facts, and Debtor's clear abuse of the bankruptcy process, not only are there a multitude of reasons to <u>deny</u> Debtor's request to continue the automatic stay under 11 U.S.C. § 362(c)(3)(b), but there are abundant grounds to dismiss Debtor's present Chapter 11 petition and sanction Debtor and Debtor's counsel for having filed a frivolous petition in the first instance.

**WHEREFORE**, it is respectfully requested that this Court deny the Debtor's motion to extend the automatic stay; and grant such other and further relief that this Court deems just and proper.

Dated: New York, New York
December 3, 2015

/s/ Slava Hazin